All rise. Illinois Appellate Court 50 years is now in session. Presiding Judge, Mark McBride. Good morning. Please be seated. We'll call the first case. Case number 12-1122, Ellicott Wood v. Quality Excavation. If the attorneys that are going to argue, would both of you step up, please identify yourselves for the record. Good morning, Your Honors. Tina Perry is on behalf of Defendant Appellate Quality Excavation. Edward Dunn on behalf of Appellate Quality Excavation. I'm sorry, would you say your name again? Edward Dunn. Good morning to both of you. Each side will have approximately 15 minutes for their argument, and from there, Mr. Dunn, you may save out some time for rebuttal. Thank you. Good morning, Your Honors. Good morning. Edward Dunn on behalf of Helen Bachweg. May it please the Court. The sole issue on this appeal is whether Mrs. Bachweg is entitled to an award of attorney's fees as costs for her successful prosecution of an orange violation. Mr. Dunn, I just have to ask you a preliminary question, if you could help us out with one thing. We noticed that when this case was filed in the circuit court, there were two plaintiffs and four defendants, and there's nothing in the record that was brought before us that tells us what happened to those other three defendants or the other plaintiff. So, could you tell us what the status of that is, please? Mrs. Bachweg's husband, Ted Bachweg, was dismissed at trial. Ted didn't have a beneficiary interest in the home in question and was affected by the excavation. A. A. Liberty was the general contractor for the project. They got directed out on the negligence count. Okay. And Konopiats' parties, Newhouse Group, they settled the action. Okay. Konopiats and Newhouse. Newhouse. Okay. And so we're going to take you at your word, because we didn't see it in the record, but there's orders that dismiss them out. Everything's final, and it's okay that you're here. Yes. The sole remaining defendant was called to excavation. Okay. Well, you've made my clerk happy, so go ahead. No problem. By way of background, in 1999, the City of Chicago instituted the excavation ordinance. The excavation ordinance requires that any excavation adjacent to a property, that the excavator or the person that owns the excavation, shore or brace the adjacent structure. The enforcement mechanism for this was the Illinois Municipal Code. The excavation was adopted under Section 13, and the Illinois Municipal Code allows a private citizen, a property owner that's affected by the construction, to enforce the ordinance. Well, the defendants mostly say that's because she didn't seek a restraining order, therefore you have no cause of action. Well, the interesting thing about that, Judge, is that the excavation ordinance itself, its remedy is damages. Under the excavation ordinance, which we enforce, there's no relief or injunction. The remedy specifically under that ordinance is damages, cost of repair. And that's why we did not do it. More importantly, in the context of this case, Mrs. Bachweg, in her home, excavation occurred in April of 06, right? The defendant allegedly shored properly. Two months later, the house started to settle and sink and shift. At that time that the excavation and the shoring was going on, she didn't know that she was damaged or if there was any problem. The damage had already been done. So there was no ability for her to seek an injunction because the next door, the excavation, the house was already going up under rough, the excavation was completed. So there was no ability for her to seek an injunction. Rather, she filed suit to enforce the ordinance, the violation, their failure to shore properly. And seeking that, by filing suit, she alleged that these violations caused me damages and I'm entitled to those damages under the excavation ordinance as provided in 13-124-410. Mrs. Bachweg proved up that claim at trial. An award was entered, and now we're here on a post-trial motion for attorneys using cause, having successfully prosecuted the ordinance violation and enforcing the ordinance. How do we enforce the ordinance? We enforce the ordinance by compelling quality to pay damage to the cost of repair of her home due to the sinking and settlement arising out of their construction activities and failure to properly shore. Just procedurally speaking, wasn't there a motion originally in front of a different judge, not the presiding judge of the trial, but a judge motion to strike the request for attorney fees? There was. Okay, so the second judge basically was, then another judge was asked to vacate that order or to allow the fees. The order was by the first judge, the motion judge was in our locatory, so we had to bring it in front of the trial judge. No, I know, I'm just trying to get the procedural history. So we then filed a motion in front of the trial judge, basically a motion to eliminate and bring evidence of attorney's fees. Quality responded with their own motion to bar evidence of attorney's fees. Once they bailed on the ordinance violation claim, establishing that quality violated the ordinance and would award damages under the ordinance, we then filed a post-trial motion petition for fees and costs. As the municipal code under which we enforce the ordinance provides that, the judge shall award reasonable attorney's fees if the plaintiff proves up an ordinance violation. And those attorney's fees are to be assessed as costs under 735 ILCS 5, Act 8108. The trial judge refused to do that, and that is why we're here. And the attorney's fees are greater than the judgment. I think they're 240 versus 249. They are, but we didn't ask for that. We asked for more than that. If you want me to respond to that. No, because if we were to remand this for the entry, I believe, you know, we'd probably suggest that, I mean, obviously they should be reviewed for their reasonableness. There's multiple factors that would have to go into that. But I do note that Justice Taylor is accurate when he says the request was more than the judgment amount that had been recovered. It was more than the judgment amount, but not what was requested. And one of the relief we're seeking is to remand back to Judge Varga for his determination of reasonable fees. Specifically, Judge Varga, is that what you want? Anyone you want. The other issue they suggest is that since the judge didn't make this finding, but the jury verdict doesn't really amount to a finding, what's your response? My response to that is that all parties acquiesce to the jury. Both parties filed a jury demand. Both parties agreed to the jury instructions. No objections were ever made for the jury to hear this. Under a case called Peoples v. Schmidt, the party's acquiescence to a jury is waiver of that. Didn't you say in your brief that the judge entered the judgment on the verdict and thereby specifically found? I did say that, Judge. All right. The court affirmed the verdict or by entry of the verdict, so it acted. The section is 11, 13, 15, right? 11, 13, 15, 65, I don't see that. All right. And, Judge, for all these forewarned reasons, Mrs. Bach will prevail in her claim to enforce the ordinance. She was awarded damages under the ordinance. Attorney's fees are mandatory under 11, 13, 15 and should be awarded here. It was error for the court to deny her her costs in toto and not consider whether or not her attorney's fees were reasonable for prosecution and enforcement of the excavation ordinance. Thank you for your time. Jerry. Good morning, Your Honors. Tina Perry is on behalf of Defendant Appley Quality Excavation. May it please the court. Your Honors, I don't have an issue with the fact that 11, 13, 15 affords a citizen a private cause of action. What we have an issue with here in this case, Your Honors, is we're disputing that a private citizen can recover attorney's fees under the code, under that section of the code, when the purpose of that code has not been fulfilled. As Your Honors know, under Broussard, which is one of the cases we cite, an ordinance is interpreted the same way as a statute is interpreted, and you have to give effect to the intent of the legislator. Now, if you look at the case law here, the intent of the legislator for 11, 13, 15 is to prevent zoning violations. To prevent them. Not to come in after the fact and seek damages for it. It's to prevent them. And that's substantiated by the language of the statute. It says an owner who shows his property will be substantially affected can bring an action in addition to other remedies to prevent the construction, to prevent the occupancy, to prevent any legal act, or to restrain, correct, or abate the violation. What does correct mean? Well, I know that you're referring to the Sampson case, Your Honor. And, you know, under, I think the dissent actually got that, what the interpretation of correct is, to be accurate. To correct a violation doesn't mean to implement a corrective plan of action after the violation has already occurred. It means to correct what's happened. So, when. Where are you getting that? You just added some words. Pardon me? You just added words to the statute. Correct what's happened. Well, correct, to correct a violation. So, in this case, when Ms. Bachweg realized that there was a violation of the ordinance, and she did realize that early on back in 2006, when she realized that there was inadequate shoring on her home and on the adjacent home, she had to act then. That's what to correct a violation means. It means she should have went into court at that time, not 17 months later, seeking damages. It meant that at that time she should have went into court to seek to enjoin the violation. In other words, to seek to have quality, properly shore. It's the foundation of the house that it was working on and the adjacent house. So, would it be your position then that if the problem did not become evident during the course of the construction, but only became evident subsequently, that there's some type of distinction? And in one case, because it became evident during the construction, the person, the party could get attorney's fees, but if things started cracking when the construction was done, then they're not held attorney's fees? That is our position. What's the rationale behind that? Well, Your Honor, because the statute allows for other remedies in addition to the injunctive relief that 1113.15 has. I mean, that statute on its face allows a court to issue injunctions, allows a court to issue temporary restraining orders. There's nothing in there that allows a court to go back into time to prevent a violation of an excavation statute or a zoning ordinance. What does other remedies mean? Other remedies means negligence, just like what happened in this case, where you can seek money damages for a claim. I mean, both claims here are basically, as Judge Vargas said, garden variety negligence claims. The only relief that Bachweg was able to get in this case, because she added a violation under the ordinance, was attorney's fees. There's no distinction between the damages that were being sought here. And the ordinance itself, again, on its face, says that the prevailing party is entitled to attorney's fees when they have furthered that statute. And that's consistent with what all the case law says that interprets the statute. So what would you have us do with regard to the Sampson case? Would you concede that in order to agree with your position, we'd have to explicitly say that we decline to follow Sampson? Well, I don't think so. Do you find some way to distinguish it? I do. I think Sampson doesn't apply on its face, without getting to the issue of the correcting. But I think Sampson doesn't apply, because in that case, the court awarded attorney's fees because the plaintiff there went above and beyond a regular negligence claim and furthered the purpose of the statute. In that case, the plaintiff identified within a month of the construction that there were issues, retained her own engineer, and then a month after that filed suit, seeking an injunction. Seeking an injunction. And I think Sampson is distinguishable based on that fact alone, because in this case, plaintiffs knew of their damages, but waited 17 months to file suit. 17 months. That, I think, is contrary to the purpose of the ordinance that says that you, to prevent a violation. So I think Sampson is distinguishable on that fact alone. And then I also think, again, going back to interpretation of what the term correct means, I think the dissent got it right in there, that the court was overreaching when it was defining what correct should mean, i.e. corrective action. You know, the dissent points out that the statutes that the court had referred to were pollutant statutes that ordered a plaintiff after they had polluted to go back and sort of, you know, remedy what they did. And, you know, the dissent finds that that was overreaching. And I think also the Burroughs case that we cite, and I realize that it was a federal court case, but I think the reasoning in that case was sound. The court there made a distinction between causes of action and remedies. It went through. Well, let me stop you for a moment. Is it your position, though, that she had no right to even sue for damages? No, that's not. She did sue for negligence. She had every right in the world to sue for negligence. Well, was she suing under this section that allows for the private action? She was suing under the ordinance. So then going to the last portion of the section, it says if an owner or tenant files suit here under, and the court finds that the defendant has engaged in any of the foregoing prohibited activities, did the jury find that Quali had engaged in prohibited activities? Well, the jury found on their verdict form, we, the jury, find for Helen Bachweg and against Quali on the city of Chicago excavation ordinance claim. We, the jury, find for Helen Bachweg and against Quali. Does that answer the question? Well, it does, except then they also find for Helen Bachweg on the negligence claim and then award damages as approximate results in the amount of $205,000. So there's no distinction on the verdict form as to whether or not those damages are for violating the ordinance or for negligence. So then we assume it's a general verge, so they did find. Then we, I think we have to interpret it as finding that there was a violation, there was an engagement in prohibited activities. Well, even so, Your Honor, in order to find a negligent, to find in favor of Helen Bachweg on the negligence claim, a violation of the statute is a prima facie case for negligence. So they would have had to show, regardless, that Quali violated the excavation statute by not shoring or not doing what they were supposed to do under the statute. But I don't think that under the ordinance it affords them the right for attorney's fees necessarily because, again, they didn't further the purpose of the ordinance, which is to prevent a violation in the first place. And going back to your point, Your Honor. I don't know. I just don't understand that this section is specifically limited to a suit for an injunction because it says a tenant or owner files suit here under, and that's for a violation of the act. But if you look at the term here under, and, again, Ms. Bachweg cited some cases that say here under ipso facto means under the act. But if you look at what here under really means, here under means under the provision of the statute that they're bringing the case under. And if you look to the language of the ordinance, again, it's everything about that, the language of the ordinance implies that it should be brought as an injunctive claim to prevent a violation, to correct a violation that's already occurred, to abate a violation. Well, you're kind of like, I don't know if you want to say that, to correct a violation that's already occurred. Well, if you're correcting a violation. Isn't that what this case was all about? It is, Your Honor. Making repairs, fixing what had already happened. But to correct a violation means that quality would have had to have gone in and properly short. The violation in this that they allegedly, or that they did violate under the excavation ordinance was that they didn't properly short. So at the time that Ms. Bachwick realized that when she hired her engineer in April of 2006, she knew that quality didn't properly short. At that time, she could have gone into court and sought injunctive relief to go and have quality properly short and do what it was supposed to do under the excavation statute. Well, I don't know. It seems to me that if you can go in and get your damages, you're really left empty if you have to then pay for the attorneys to prosecute the action for you. Your Honor, I think that opens a slippery slope. And, again, some of the cases that we cited sort of deal with that issue. I mean, if you were to implement an attorney's fee provision for every building code violation that an owner had against an adjacent landowner, you're going to have a lot of litigation here in front of Your Honor. But we're talking about this particular statute where one court has already interpreted it as allowing fees in this situation. But, again, Your Honor, I think that, you know, and especially in the Higginbottom case where the court found that there was an abnormally large amount of time that went by where these neighbors joined in on the city's lawsuit and then tried to recover attorney's fees years later for violations that didn't necessarily affect them and that, you know, would prevent in the future a developer from coming in and developing a property that had existing building code violations. You know, again, I think it's a slippery slope to allow neighboring landowners and owners to come in. Slippery slope. Kind of appropriate words, huh, for this situation? Yes. Yeah, no pun intended. I didn't mean it, but, you know, I'll take the pun, I guess. But, you know, again, Your Honor, I think that, you know, this is going to open up a door for all sorts of litigation being brought where a garden variety, as Judge Vargo pointed out, this is a garden variety negligence claim that, you know, someone's coming in and tagging on attorney's fees to it when they didn't do anything to further the purpose of the ordinance. Anything further? No, thank you, Your Honors. Mr. Dunn. I want to judge really briefly. The intent of the ordinance is to protect the property owner for negligent shoring and they are to shore the damages arising out of that. The ordinance, the intent of the ordinance, which is enforced under the Illinois Municipal Code, is to provide those very people with damages. That furthers the Illinois Municipal Code's actions to correct or abate a violation. Here, Mrs. Bachweg filed an action to correct the violation. What was her remedy? Her remedy under the excavation ordinance was damages, the cost of repair. That remedy is referenced in the Municipal Code because it says, or alternative remedies. In 1999, they enacted this excavation ordinance and specifically expressly provided the remedy of damages. With respect to the slippery slope issue, Samson v. Miglin was decided in 1986. How many cases have you seen regarding this issue? Secondly, the ordinance itself requires that a contractor excavate within five feet of another house. That's the only time it's going to apply. There is no slippery slope argument here. We're not opening up the world to attorney's fees in negligence or ordinance violation cases. It's very limited. Thank you, Judge. It seems to me that the way you avoid falling onto the slippery slope is don't violate the building code. I would agree with you, Judge. Here, the violation is clear. We proved up the violation. We're entitled to attorney's fees and costs under the Municipal Code 131115. Thank you, Judge. I would ask that you remand it for consideration of reasonable terms. All right. The matter will be taken under advisement. It was well argued and well briefed by both sides. Thank you.